1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9      JEANNIE M. KOPP, a married          )        No. CV-07-216-LRS
       woman,                               )
10                                          )
                        Plaintiff,          )        **ORDER GRANTING**
11                                          )        **MOTION FOR SUMMARY**
       v.                                   )        **JUDGMENT, IN PART**
12                                          )
13     REARDAN/EDWALL SCHOOL                )
       DISTRICT NO. 009,                    )
14                                          )
15                      Defendant.          )

16        **BEFORE THE COURT** is the Defendant's Motion For Summary

17     Judgment (Ct. Rec. 25) and the Plaintiff's Motion To Strike Defendant's Defenses

18     And Affirmative Defenses (Ct. Rec. 35).  Telephonic oral argument was heard on

19     March 12, 2009.  Michael B. Love, Esq., argued on behalf of Plaintiff.  Michael E.

20     McFarland, Esq., argued on behalf of Defendant.

21

22     **I. BACKGROUND**

23        This case was removed from Lincoln County Superior Court based on

24     federal question jurisdiction.  In her First Amended Complaint,  Plaintiff Jeannie

25     M. Kopp asserts five claims against Defendant Reardan/Edwall School District: 1)

26     failure to accommodate the Plaintiff's disability in violation of the Washington

27     Law Against Discrimination (WLAD), RCW 49.60 et seq., by denying her request

28

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-     1**

for leave; 2) intentional discrimination against the Plaintiff on the basis of disability, in violation of the WLAD, by denying Plaintiff's request for leave and subsequently terminating her employment; 3) retaliatory and wrongful discharge in violation of public policy in that Defendant retaliated against Plaintiff for raising concerns about matters in the workplace, and/or for asserting her rights to take medical leave, and by terminating her for exercising her rights as a union member to file a grievance and be represented by either union or legal counsel; 4) denying Plaintiff's leave request in violation of both Washington's Family Leave Act (WFLA)and the federal Family Medical Leave Act (FMLA); and 5) failure by Defendant to designate Plaintiff's leave as pursuant to the FMLA and to notify her of the same.

Defendant moves for summary judgment on all of Plaintiff's claims, asserting Plaintiff was not "disabled;" that even if she was "disabled," she was not denied a reasonable accommodation; that the Defendant had a legitimate, non-discriminatory reason for not renewing Plaintiff's contract with the school district; that the Defendant was not "discharged," but rather her contract was not renewed for reasons that were not retaliatory or wrongful; Plaintiff received all of the leave to which she was entitled under the WFLA and the FMLA; and failure to designate Plaintiff's leave as pursuant to the WFLA or the FMLA does not give rise to liability under either Act.

## II.  DISCUSSION

### A.  Motion To Strike

Plaintiff asserts Defendant's motion for summary judgment should be denied because it is premised on defenses and affirmative defenses which were not

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    2**

asserted in Defendant's "Answer" to Plaintiff's Complaint.[1]

Fed. R. Civ. P. 8(b)(1) requires that in general, in responding to a pleading, a party must:  (A) state in short and plain terms its defenses to each claim asserted against it, and (B) admit or deny the allegations asserted against it by the opposing party.  Fed. R. Civ. P. 8(c) requires that in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense.

In general, any matter not in issue under a simple denial of allegations in the complaint is an "affirmative defense" and must be specifically pleaded as such in the answer.  An affirmative defense is an assertion raising new facts and arguments that, if true, would defeat the plaintiff's claim, even if the allegations in the complaint are true.  *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2nd Cir. 2003). The test for determining whether a defense is "affirmative" or "avoidance" in nature is whether  it would bar a right to recovery "even if the general complaint were more or less admitted to."  *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995).  This also includes matters on which, as a matter of substantive law, defendant usually has the burden of proof if the case goes to trial. An "affirmative" defense for pleading purposes is a matter upon which the defendant bears the burden of proof or which does not controvert plaintiff's proof. *Brunswick Leasing Corp. v. Wisconsin Central, Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998).

It appears to the court that the assertions made in Defendant's motion for summary judgment are in issue based on Defendant's simple denial of the

---

[1] This was the "Answer" (Ct. Rec. 4) filed on January 7, 2008 in response to Plaintiff's original complaint which had been filed in Lincoln County Superior Court and then was removed here by the Defendant.  With leave of the court, Plaintiff filed a First Amended Complaint on September 10, 2008 (Ct. Rec. 19 and 20), but it appears Defendant has never filed an "Answer" specifically in response to the First Amended Complaint.

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-    3**

1  allegations in Plaintiff's complaint.  Hence, those assertions are not "affirmative"
2  or "avoidance" defenses.  Those assertions go directly to Plaintiff's *prima facie*
3  case under the WLAD which she has the burden of proving (i.e., that she was
4  "disabled;" that the Defendant failed to reasonably accommodate any such
5  disability), as well as her burden of proving under the common law that she was
6  discharged in violation of public policy, and her burden under the WFLA and the
7  FMLA of proving that Defendant "interfered" with exercise of leave.

8         It is true that with regard to the WLAD claim, a defendant-employer bears
9  the burden of proving that an otherwise reasonable accommodation would be an
10 undue hardship to the employer's business.  If the employer fails to reasonably
11 accommodate the limitations of a disabled employee, such failure constitutes
12 discrimination unless the employer can demonstrate such an accommodation would
13 be an undue hardship to the employer's business.  *Snyder v. Medical Serv. Corp.*,
14 98 Wn.App. 315, 326, 988 P.2d 1023 (1999).  As a matter of substantive law under
15 the WLAD, a defendant has the burden of proof with regard to "undue hardship"
16 and so this is in the nature of an "affirmative" or "avoidance" defense.  Here, the
17 Defendant school district did not plead "undue hardship" as an affirmative defense.
18 That said, the court fails to see that Defendant has specifically asserted it as a
19 defense in its summary judgment papers.  The Defendant's argument is that
20 Plaintiff was not disabled, and even if she was, that she was fully and reasonably
21 accommodated because she was given 16 weeks of leave (partly paid and partly
22 unpaid).  Defendant does not contend it denied leave because it would have caused
23 "undue hardship."  It says it granted the leave, even though it created a "hardship"
24 for the school district.  (See pp. 12-13 of Defendant's Memorandum Of Authorities
25 at Ct. Rec. 27:  "Ms. Kopp's extended leave essentially created a hardship to the
26 District due to shortage of trained staff and the District's expenditure of funds to
27 pay for training that Ms. Kopp was supposed to do").

28        In any event, for reasons discussed *infra*, the court is granting summary

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-     4**

judgment to the Defendant on the Plaintiff's WLAD reasonable accommodation claim, thus rendering moot any issue as to whether it was incumbent upon the Defendant to plead "undue hardship" as an affirmative defense.

Plaintiff's Motion To Strike Defendant's Defenses And Affirmative Defenses will be denied.

### B.  Summary Judgment
### 1.  Fed. R. Civ. P. 56 Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.  The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587.  Nonetheless, summary judgment is required against a

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, IN PART-    5**

party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

### 2.  WLAD Disability Discrimination

Under the WLAD, it is unlawful for an employer to discriminate against any person in the terms or conditions of employment or discharge any employee because of the presence of any sensory, mental, or physical disability.  RCW 49.60.180(2) and (3).  If the employer fails to reasonably accommodate the limitations of a disabled employee, such failure constitutes discrimination unless the employer can demonstrate such an accommodation would be an undue hardship to the employer's business.  *Snyder*, 98 Wn.App. at 326.

A *prima facie* case of failure to reasonably accommodate a disability under the WLAD includes:  (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.  *Davis v. Microsoft Corporation*, 149 Wn.2d 521, 532, 70 P.3d 126 (2003).  The burden is on the employee to present a *prima facie* case of discrimination, including medical evidence of disability. *Pulcino v. Federal Express Co.*, 141 Wn.2d 629, 642, 9 P.3d 787 (2000).  Only when the employee meets this burden, does the burden of proof shift to the employer to show that it had a legitimate, non-discriminatory reason for its adverse employment action against the employee.

//

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    6**

### a.  Was Plaintiff Disabled?

Defendant contends Plaintiff's inability to handle the stress and anxiety caused by working for Dwight Cooper, the principal of the Reardan Elementary School, did not render her "disabled" to perform the essential functions of head cook at the school.  Defendant contends Plaintiff experienced no more than "situational anxiety" over her encounter with Cooper.

RCW 49.60.040(25)(a) defines "disability" as "the presence of a sensory, mental, or physical impairment that . . . (i) [i]is medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s perceived to exist whether or not it exists in fact."  "A disability exists whether it is temporary or permanent, common or uncommon, mitigated or unmitigated, or whether or not it limits the ability to work  generally or work at a particular job or whether or not it limits any other activity within the scope of this chapter."  RCW 49.60.040(25)(b).  An impairment must have "a substantially limiting effect upon the individual's ability to perform her job" and "medical documentation must establish a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the effect that it would create a substantially limiting effect."  RCW 49.60.040(25)(d)(i) and(ii).  "[A] limitation is not substantial if it has only a trivial effect."  RCW 49.60.040(e).

Based on the deposition testimony of Plaintiff's treating physician, Laurie Summers, M.D., ( Ex. C to Ct. Rec. 34 ), the court finds there is a genuine issue of material fact whether  Plaintiff had a "disability" that substantially limited her ability to perform her job as head cook at the Reardan Elementary School during the 2004-05 school year.  This disability was either entirely emotional in nature, or a combination of emotional and physical problems (i.e., chest pain).

Dr. Summers acknowledged that with regard to Plaintiff's February 22, 2005 visit, her (the doctor's) chart note revealed that the reason for releasing Plaintiff from work was "stress" only.  (Dep. at p. 42).  This was in accord with a work

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    7**

release note she wrote for the Plaintiff on that date.  (Ex. A to Ct. Rec. 29).  At that time, there was no mention of rib pain, right upper quadrant pain, and no discussion of cardiac symptoms. (Dep. at p. 42).  Subsequent work release notes that Dr. Summers wrote for the Plaintiff, up until April 2005,  made no mention of any physical problems.  (Ex. A to Ct. Rec. 29).  It was not until April of 2005 that Dr. Summers mentioned any physical problems the Plaintiff was experiencing. (Dep. at pp. 27-28).  In a note dated April 15, 2005, Dr. Summers recommended Plaintiff be off work through the end of the 2004-05 school term for "medical reasons."  (Ex. A to Ct. Rec. 29).  Dr. Summers did not release the Plaintiff to return to work until August 2005, long after the school district had already informed Plaintiff it would not be renewing her contract for the 2005/2006 school year.  (Dep. at p. 42).  A work release note from Dr. Summers, dated August 3, stated Plaintiff could return to work August 8, 2005, without restrictions.  (Ex. A to Ct. Rec. 29).

At her deposition (Ex. B to Ct. Rec. 34 at p. 107), Plaintiff testified that on April 15, 2005, that even without the stress and anxiety arising from her interactions with Mr. Cooper, she still would have requested leave because Dr. Summers  was putting her through extensive testing at the time (presumably cardiac evaluations).

### b.  Was The Plaintiff Reasonably Accommodated?

Plaintiff does not argue that a reasonable accommodation would have been for her to work under a supervisor other than Mr. Cooper.  Plaintiff does not dispute that  asking for a different supervisor would not have been a reasonable accommodation.   Rather, Plaintiff contends the reasonable accommodation she should have been provided was a medical leave of absence beyond her WFLA and FMLA entitlement of 12 weeks of unpaid leave (RCW 49.78.220(1) and 29 U.S.C. Section 2612(a)), and without loss of employment for the 2005-06 school year.

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-     8**

In a letter to Superintendent Skip Berquam dated April 15, 2005, Plaintiff requested that the school district grant her a leave of absence for the remainder of the 2004-05 school year due to "medical reasons."  In that letter, Plaintiff also advised that "[i]t is my intention to return to my job as Head Cook for the 2005-2006 school year, unless for medical reasons I am unable to."  (Ex. A to Ct. Rec. 29).  Superintendent Berquam responded in a letter dated April 21, 2005, in which he advised the Plaintiff that the school district's Board of Directors had denied her request for a leave of absence for the remainder of the 2004-05school year. Berquam noted that leaves of absences are to be granted "only when they shall not have an undesirable impact upon the educational program or business operations of the district."  He also thanked the Plaintiff for her time with the district and wished her well in her future endeavors, indicating that Plaintiff's contract would not be renewed for the following school year (2005-06).  (Ex. F. to Ct. Rec. 34).  It is undisputed that Plaintiff was a "classified employee" of the school district who was statutorily limited to one year employment contracts.  RCW 28A.300.400. "Classified employees" are to be given notice at least two weeks prior to the end of the school year as to whether they will be hired for the upcoming school year.  This is done by way of the employee being provided a "Notification of Reasonable Assurance."

The school district contends Plaintiff was reasonably accommodated because she received the exact accommodation she requested, that being medical leave. Indeed, Plaintiff acknowledges that Defendant "treated her leave as a medical disability . . . treating it as leave for a serious health condition under FMLA." After  February 17, 2005, Plaintiff did not work another day for the school district during the 2004-2005 school year.  It is undisputed that on or about March 15, 2005, she exhausted her sick and vacation pay and was thereafter on unpaid leave status, although the district continued to pay all of her benefits until the end of the school year.  The school district asserts that because Plaintiff was only statutorily

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-    9**

employed for a period of one school year (2004-05), its duty to accommodate the Plaintiff applied only to that year, and not to the subsequent school year (2005-06).

The court finds that assuming Plaintiff had a "disability," it was a temporary disability which no longer existed by August 2005 when Dr. Summers released the Plaintiff to return to work without restrictions.  The Defendant school district reasonably and fully accommodated this disability by allowing Plaintiff to take a total of 16 weeks unpaid leave from mid-February 2005 to the end of the school year in mid-June 2005.  Defendant paid all of Plaintiff's school benefits until the end of the school year. The Plaintiff received the precise accommodation she requested: a leave of absence through the end of the school year.  The court notes that in her April 15, 2005 letter requesting such leave, Plaintiff did not request that she be guaranteed employment for the 2005-06 school year.  Although Plaintiff stated she intended to return during the 2005-06 school year, she apparently recognized that as a "classified employee," she was not guaranteed employment beyond the current school year (2004-05).

Since Defendant reasonably accommodated Plaintiff's disability during the 2004-05 school year, Defendant will be awarded judgment on Plaintiff's WLAD claims.  The non-renewal of Plaintiff's employment for the 2005-06 school year was not related to Plaintiff's "disability."  If anything, it was related to Plaintiff's use of leave, as discussed below.

### 3.  Wrongful Discharge In Violation of Public Policy

The Washington Supreme Court has recognized that a claim for wrongful discharge in violation of public policy may arise when an employer discharges an employee for reasons that contravene a clear mandate of public policy.  *Korslund v. DynCorp Tri-Cities, Servs., Inc.*, 156 Wn.2d 168, 178, 125 P.3d 119 (2005).  This cause of action was initially recognized as an exception to the terminable-at-will

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    10**

doctrine and has since been extended to employees who are dischargeable only for cause, including those who may be covered by a collective bargaining agreement. *Id*. The discharge may be either express or constructive. *Snyder v. Med. Serv. Corp.*, 145 Wn.2d 233, 238, 35 P.3d 1158 (2001). Plaintiff must prove: (1) the existence of a clear public policy; (2) that discouraging the conduct in which the employee engaged would jeopardize the public policy; and (3) that the public policy linked conduct caused the dismissal. *Korslund*, 156 Wn.2d at 178. The employer can defeat the cause of action by offering an overriding justification for the employee's dismissal. *Id*.

The school district had the right not to renew Plaintiff's employment for the 2005-06 school year for any reason, so long as the reason was a legal one. RCW 28A.400.300. The WFLA and the FMLA prohibit adverse employment action against an employee for taking leave under these Acts. RCW 49.78.300 and 29 U.S.C. Section 2615.

It is undisputed that Plaintiff misrepresented to Cooper what the Plaintiff had been told by Kim Johnson of the Lincoln County Health Department regarding the use of disposable trays and utensils, and the use of raw hamburger. (See Plaintiff's Statement of Facts Nos. 21-34 which are uncontroverted by the Defendant). Plaintiff contends, however, that contrary to the school district's representation, this "honesty" and "character" issue was not the sole reason for non-renewal of her employment contract for the 2005-06 school year, but rather was a pretext for the same, that pretext being retaliation for her use of leave.

Plaintiff contends there is a genuine issue of material fact whether her employment contract was not renewed for an illegal reason. She points to Cooper's February 18, 2005 memo which was intended to memorialize his February 16 conversation with Plaintiff. Plaintiff notes that the memo itself explains that the intent of Cooper's meeting with the Plaintiff, and of the the memo, was "not disciplinary or punitive in nature, rather I hope you will be aware

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    11**

of the concerns and, where appropriate, comply with the directions or expectations I provide you." (Ex. E to Ct. Rec. 34). Plaintiff also points to deposition testimony from Cooper in which he acknowledged that although he basically told Superintendent Berquam in a conversation on or about February 18, 2005, that he did not think the Plaintiff should be renewed for following school year, no decision was made at that time as to whether Plaintiff would be renewed. (Ex. A to Ct. Rec. 34 at pp. 82-83).

Cooper and the Plaintiff met again on April 19, 2005. It is undisputed that at the time of this meeting, Cooper was aware of the request the Plaintiff had made to the school board for a leave of absence for the remainder of the 2004-05 school year. Cooper advised Plaintiff he was going to recommend the school board deny her request for leave. At the April 19 meeting, Cooper suggested that Plaintiff should resign and advised her that if she did not resign, he would give her a negative evaluation for the 2004-05 school year. Cooper told Plaintiff that if she did resign, her evaluation would not be negative and that he would remove his February 18, 2005 memorandum from the Plaintiff's file. Plaintiff refused to resign. She signed the February 18, 2005 memorandum, indicating completion of the process, but specifically noted her disagreement with the content of the memo. (Ex. E to Ct. Rec. 34). Plaintiff notes that the April 21, 2005 letter from Superintendent Berquam, denying her request for leave, mentioned nothing about Plaintiff's honesty, character or job performance as reasons why Plaintiff would not be retained for the following school year (2005-06). (Ex. F to Ct. Rec. 34).

Although Cooper and Berquam assert in their deposition testimony that it was Plaintiff's honesty, character and job performance which was the sole reason for not renewing the Plaintiff's employment contract, the documentary record is silent on that issue and therefore, the court finds a jury could reasonably infer that issue was not the sole reason for the non-renewal of Plaintiff's employment contract. Plaintiff notes that her 2002-03 and 2003-04 appraisal reports from

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-    12**

Cooper were entirely satisfactory.[2]  On May 4, 2005, Plaintiff met with Cooper for an annual performance evaluation for the 2004-05 school year.  In that appraisal report, two areas were marked as unsatisfactory, those being "The Support Person as a Professional," and "Working Relationship and Communication with other Personnel, Administration and Students."  The "Recommendation For Improvement" section of the report recounted the issue concerning Plaintiff's misrepresentation of what she had been told by Ms. Johnson of the Lincoln County Health Department.  Plaintiff refused to sign this report.  (Ex. G to Ct. Rec. 34 ). Plaintiff filed a grievance against the school district on May 27, 2005.  On June 2, the grievance was denied on the basis that it was untimely, but the district agreed that Plaintiff's negative evaluation dated May 4 would be rewritten.  Consequently, on June 9, 2005, Cooper prepared another appraisal report.  On this report, the same two areas were marked as unsatisfactory, although this time in the "Recommendation For Improvement" section, there was no mention of the incident involving Ms. Johnson.  Instead, it stated that Plaintiff had not satisfactorily fulfilled two of her responsibilities, those being preparing daily main dish or bake breads and desserts from scratch, and not incorporating USDA commodities into menus, thereby costing the district more money.  Plaintiff did sign this appraisal report indicating "completion of the process, but not necessarily agreement" with the evaluation.  (Ex. I to Ct. Rec. 34).

Apparently, Plaintiff wrote a letter to the school district on June 21, 2005 requesting a medical leave of absence.  Superintendent Berquam responded by way of a letter dated June 22 recounting what had transpired, but as Plaintiff notes, there was no mention of the Lincoln County Health Department issue.  (Ex. L to

_____

[2]  It was not until his February 18 memo that Cooper put into writing the other things he did not like about Plaintiff's past job performance, including not baking from scratch, not using up things before they went to waste, and not trying to serve non-meat meals on Friday, as opposed to other days of the week.

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-    13**

1  Ct. Rec. 34 ).[3]

2     The fact Plaintiff does not dispute that she misrepresented to Cooper what

3  she had been told by Ms. Johnson, combined with the fact that the district was not

4  obligated to renew Plaintiff's employment contract for the 2005-06 school year,

5  certainly are factors indicating there was no "discharge," and that the failure to

6  renew the contract was not wrongful.  That said, the court finds the Plaintiff has

7  produced sufficient evidence to raise a genuine issue of material fact that the

8  honesty issue was not the sole reason for non-renewal of the contract, but that the

9  district was not pleased with Plaintiff's prolonged leave of absence during the

10 2004-05 school year (16 weeks), a leave of absence which the district  effectively

11 treated as a medical leave of absence.  Furthermore, a jury could reasonably infer

12 that Cooper's willingness to not give the Plaintiff a negative evaluation and to pull

13 the February 18, 2005 memorandum from her file, in exchange for her resignation,

14 indicates the honesty issue was not the sole reason for not renewing Plaintiff's

15 contract.

16    The court will deny summary judgment on Plaintiff's claim for wrongful

17 discharge in violation of public policy.

18

19    **4.  WFLA and FMLA Causes of Action**

20    As discussed *supra*, Plaintiff was not denied medical leave.  She received

21 such leave from February 18, 2005 through June 10, 2005, a total of 16 weeks,

22 approximately four of which was paid leave (February 18 to March 15), and

23 approximately twelve of which was unpaid leave (March 16 through June 10).

24 Although there is no cause of action for denial of leave, Plaintiff does have a cause

25

26    _____

27    [3]  The Superintendent's letter indicates that it was during a May 4, 2005 meeting
   with Plaintiff that he advised her she would not be renewed for the 2005-06 school
28 year.

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    14**

1 of action arising from her taking of leave.

2       Because there is a genuine issue of material fact whether Defendant, in

3 violation of public policy, retaliated against Plaintiff for taking leave under the

4 WFLA and FMLA by not renewing her employment contract, it follows that there

5 is a genuine issue of material fact whether Defendant "interfered" with Plaintiff's

6 rights under those Acts.  It is unlawful for an employer to "interfere with, restrain,

7 or deny the exercise of or the attempt to exercise, any right provided" by the Acts.

8 RCW 49.78.300(1)(a) and 29 U.S.C. Section 2615(a)(1).  Employers cannot use

9 the taking of FMLA leave as a negative factor in employment actions.  *Bachelder*

10 *v. America West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001), citing 29

11 C.F.R. Section 825.220(c).[4]   In order to prevail on an "interference" claim, a

12 plaintiff must prove by a preponderance of the evidence that her taking of WFLA

13 and FMLA protected leave constituted a negative factor in the adverse employment

14 action taken against her.  *Id*. at 1125.  While it is true, as Defendant points out, that

15 the mere fact Plaintiff was on leave did not preclude the school district from

16 exercising its statutory right not to renew Plaintiff's employment for the following

17 school year, the Defendant still could not fail to renew based on an impermissible,

18 illegal reason, such as because the Plaintiff exercised her statutory rights to take

19 leave.

20       The "Fifth Cause of Action" stated in Plaintiff's First Amended Complaint is

21 that Defendant's failure to designate Plaintiff's leave as leave pursuant to the

---

23   [4] The anti-retaliation and anti-discrimination provisions of 29 U.S.C. Section
24 2615(a)(2) and (b), and RCW 49.78.300(1)(b) and (2), "[b]y their plain meaning
. . . do not cover visiting negative consequences on an employee simply because
25 [s]he has used . . . leave." *Bachelder*, 259 F.3d at 1124.

26   Apparently, there are no published Washington decisions involving a cause
of action brought pursuant to RCW 49.78.300 of the WFLA.  The WFLA,
27 however, appears to be identical to the FMLA and so it is reasonable to believe
there are no substantive differences between the two Acts.
28

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-    15**

WFLA and the FMLA, and the failure to provide Plaintiff with written notice of the same, constitute "interference" with Plaintiff's WFLA and FMLA rights. Defendant notes that neither WFLA or the FMLA contain such requirements, and federal regulations concerning FMLA no longer require employers to provide written notice that requested leave is to be designated as FMLA leave.[5]  Defendant cites a number of decisions (i.e., *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 940 (8th Cir. 2000)),which have rejected FMLA claims against an employer for failure to designate leave as FMLA leave and give notice of the same to an employee.  What is critical is whether an employee is afforded the 12 weeks of leave guaranteed by the FMLA and in the captioned matter, Plaintiff received that amount of leave and more.

Plaintiff makes no attempt to rebut Defendant's argument that as a matter of law there is no WFLA or FMLA claim against an employer for failure to designate leave as FMLA leave, and provide notice to the employee of such designation. Accordingly, the court will grant summary judgment for the Defendant on this aspect of the Plaintiff's WFLA and FMLA claims.

**III.  CONCLUSION**

For the reasons stated above, Plaintiff's Motion To Strike (Ct. Rec. 35) is **DENIED**.

For the reasons stated above, Defendant's Motion For Summary Judgment (Ct. Rec. 25) is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** with regard to: 1)  Plaintiff's WLAD claims because Plaintiff was reasonably accommodated for the 2004-05 school year; and 2) that aspect of Plaintiff's WFLA

---

[5]  The former 29 C.F.R. Section 825.208 stated that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section."

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT, IN PART-    16**

and FMLA claims regarding designation and notification of leave.  The  motion is **DENIED** with regard to Plaintiff's common law cause of action for  wrongful discharge in violation of public policy, and statutory causes of action under WFLA and FMLA for "interference" with Plaintiff's exercise of leave.  There is a genuine issue of material fact whether Defendant declined to renew Plaintiff's contract for the 2005-06 school year because of her taking of WFLA and FMLA leave during the 2004-05 school year.  In other words, the issue is whether the Defendant, although affording Plaintiff a reasonable accommodation for the 2004-05 school year, nevertheless retaliated against her for that accommodation by not renewing her employment contract for the 2005-06 school year.

    **IT IS SO ORDERED.**  The District Court Executive is directed to enter this order and provide copies to counsel.

    **DATED** this 19th day of March, 2009.

*S/ Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER GRANTING MOTION FOR**
**SUMMARY JUDGMENT, IN PART-    17**